# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID ALDRICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00326 |
| | ) | (Removed from the Chancery Court |
| WVLT-TV, INC. d/b/a WVLT/WBXX/EVLT, | ) | of Knox County, Tennessee, |
| | ) | Case No. 198645-2) |
| Defendant. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISSOLVE THE STATE COURT'S EX PARTE TEMPORARY RESTRAINING ORDER

---

Defendant WVLT-TV, Inc. ("WVLT") has moved this Court to dissolve the Temporary Restraining Order ("TRO") entered by the Knox County Chancery Court on August 20, 2019 and to set an emergency hearing.

## BACKGROUND FACTS

On August 20, 2019, Plaintiff filed a Complaint and "Emergency Motion for Temporary Restraining Order" with the Knox County Chancery Court seeking to have an Employment Agreement between Plaintiff and WVLT declared invalid and unenforceable. Plaintiff submitted a proposed Temporary Restraining Order ("TRO"), which the Knox County Chancery Court entered that same day without any response or argument from WVLT. The TRO (D.E. 1-1) enjoins WVLT from "attempting to impose any of the terms of the Contract on Plaintiff as identified in Plaintiff's Complaint" and "taking any action which would impede, prohibit or prevent Plaintiff from taking on employment or work as an employee or independent contractor, including, but not limited to, work on local news stations in Knoxville or otherwise as a meteorologist." The TRO remains in effect for 15 days after entry, so it is set to expire on September 4, 2019. Essentially,

WVLT is enjoined from preventing Plaintiff from violating the non-compete provisions in his Employment Contract.[1]

<b><u>LEGAL ARGUMENT</u></b>

**A.      Plaintiff's Emergency Motion for Temporary Restraining Order was Procedurally Deficient, and Therefore Should Be Dissolved.**

Pursuant to Tennessee Rule of Civil Procedure 65.03, a court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney <u>only if</u> the applicant's attorney "certifies in writing efforts made to give notice and the reasons why it should not be required." Federal Rule of Civil Procedure 65(b)(1)(B) requires the same certification. Plaintiff's counsel provided no such certification with the motion (*see* D.E. 1-1), therefore failing to satisfy the rules. The TRO was obtained through a procedurally deficient motion and should be dissolved.

**B.      Plaintiff Does Not Have a Strong or Substantial Likelihood of Success on the Merits**

When determining whether to issue a preliminary injunction under Federal Rule of Civil Procedure 65, the Court is to consider: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to others; and (4) whether the public interest is advanced by the injunction. *See Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012).

Plaintiff failed to establish the first element. Plaintiff asserts three theories in his Complaint on why the Employment Agreement's non-compete provisions should be deemed invalid: 1) he

---

[1] The TRO has the practical effect of providing Plaintiff a 15-day window to freely violate his Employment Agreement and work for a WVLT competitor on-air. Should a court later hold the Employment Agreement is enforceable, WVLT would have no recourse to recoup any damages for harm it suffered by Plaintiff's behavior while the TRO was in effect. By allowing Plaintiff to violate the Employment Agreement before determining whether the Employment Agreement was valid, the state court judge essentially put the cart before the horse when entering the emergency TRO.

2

avers he never received a letter extending the term of his Employment Agreement; 2) the

Employment Agreement is void because he signed it under duress; and 3) the non-compete

provision within the Employment Agreement is not reasonable and therefore should be deemed

void.  Compl. at ¶ 30-63 (D.E. 1-1).

> **1.      Plaintiff Received Notice Extending the Employment Agreement, and Therefore, the Employment Agreement was Properly Renewed**

The initial term of the Employment Agreement was July 3, 2017 to July 2, 2018.  Pl.'s

Emergency Motion for Temporary Restraining Order ("Mot. for TRO") (D.E. 1-1) at Ex. A,

Section 4.  Following the initial term, WVLT had the option to renew the Employment Agreement

for another 12 months, provided WVLT gave Plaintiff written notice not less than 90 days before

the end of the initial term on July 2, 2018.  *Id.*  Plaintiff avers he never received a copy of the letter

providing written notice of WVLT renewing the Employment Agreement.  Compl. at ¶ 27.

Contrary to this assertion, WVLT emailed Plaintiff a contract extension letter on March 29, 2018

to Plaintiff's WVLT email address.  Declaration of Jasmine Hardin[2] ("Hardin Dec.") at ¶ 3, Ex. 1.

> David –
>
> Attached is your Contract Extension letter.  As stated in your contract, this letter is to serve as formal notification that **the station will exercise its option to extend the Term of your Agreement for another year**.  As you know your original contract is divided into "option periods."  The station is to provide to you a formal notice of its intention to continue the contract at least 90 days before the next option period arrives.  So glad to have you as part of the WVLT-TV team.
>
> Please let me know if you have any questions.
>
> Thank you for Making a Difference each day!

*Id.* (emphasis added).  Plaintiff cannot dispute that he received the correspondence formally

---

[2] The Declaration of Jasmine Hardin is attached as Exhibit A to WVLT's Motion to Dissolve the TRO.

extending his Employment Agreement for another year because just three minutes after the email with the attached contract extension letter was sent to him, Plaintiff responded "Thank you." *Id.* Thus, contrary to Plaintiff's assertion, the Employment Agreement and its non-compete terms were properly renewed through July 3, 2019.

Additionally, WVLT paid Plaintiff his regular salary, which Plaintiff accepted, through the end of the second term of the Employment Agreement on July 3, 2019. Hardin Dec. at ¶ 4. Plaintiff's last day actually working at WVLT was April 3, 2019. If Plaintiff truly believed the Employment Agreement had lapsed and he was an at-will employee when he stopped working in April 2019, he cannot have it both ways and also accept his salary through the full term of the Employment Agreement for work he wasn't doing. Instead, he collected a paycheck for three full months without actually working, because Plaintiff knew the Employment Agreement was in effect as evidenced by the email exchange above. Therefore, Plaintiff's theory that the Employment Agreement was not extended is not likely to succeed.

### 2. Plaintiff Fails to Establish Duress

Next, Plaintiff asserts the Employment Agreement is not enforceable because he signed it under duress. Specifically, Plaintiff claims he had to sign the Employment Agreement within 24 hours in 2017 or risk being replaced, and that he was not allowed to have his agent review the Employment Agreement before he signed it. Compl. at ¶¶ 9, 13, 37, 38. Whether or not an agent could have reviewed the Employment Agreement has no impact on its validity: "One who signs a contract is presumed to know its contents, and… if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Stout v. J.D. Byrider, Inc.*, 228 F.3d 709, 715 (6th Cir. 2000). *See also Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) ("[O]ne is under a duty to learn the contents of a written contract before he signs it, and… if, without being

4

the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril").

Tennessee courts have defined duress in the contract context as "a condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do an act or make a contract not of his own volition, but under such wrongful external pressure." *In re Estate of Creswell*, 238 S.W.3d 263, 267 (Tenn. Ct. App. 2007) (quoting *Rainey v. Rainey*, 795 S.W.2d 139, 147 (Tenn. Ct. App. 1990)). "We have further defined duress as consisting of 'unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons.'" *Id. quoting Boote v. Shivers*, 198 S.W.3d 732, 745 (Tenn. Ct. App. 2005). Plaintiff admits in his Complaint that he had **at least 24 hours** to consider the Employment Agreement before he signed it and also initialed every page in the attachment to the Employment Agreement. Having 24 hours to review and sign an Employment Agreement, even with the fear that someone else may take your job[3], comes nowhere close to establishing "unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons." Indeed, Plaintiff operated under the terms of the Employment Agreement for a full two years after he signed it, never complained or voiced any alleged concern about having signed it, and he actually thanked WVLT (Hardin Dec. at Ex. 1) upon its extension for another year – waiving Plaintiff's ability to now claim undue coercion. It was only until he was separated from WVLT, hired a lawyer, and sought to invalidate its non-compete provision that Plaintiff first voiced his coercion allegations. Accordingly, Plaintiff has not established a likelihood of success on his duress argument.

---

[3] In an effort to deflect the Court's attention from the legal merits of his argument, Plaintiff makes a number of allegations about the past alleged working environment at WVLT that are patently irrelevant to this dispute, and thus, WVLT will not respond to those allegations here.

5

### 3. The Employment Agreement's Non-Compete Provision is Enforceable

Plaintiff's last attempt to undermine the Employment Agreement is to request the Court deem just its non-compete provision unenforceable. The provision is limited to one year following termination of his employment under the Employment Agreement and the Knoxville Designated Market Area, which only stretches roughly 75 miles around Knoxville. Courts routinely hold non-compete provisions of one year are reasonable (*See In re Talmage*, 758 F.2d 162, 166 (6th Cir. 1985) and within the same media market are reasonable. *See Radio One, Inc. v. Wooten*, 472 F. Supp. 2d 754, 757 (E.D. Mich. 2006) (restrictive covenant prohibiting radio personality from broadcasting within 75 miles of former employer's transmitters was reasonable).

His sole argument is the non-compete inflicts economic harm on him, while claiming, without any evidentiary support, that "[a]ny damage that could be done by Plaintiff working for a competitor has already been done by Defendant's own actions" because fans are upset over Plaintiff's termination. Compl. at ¶¶ 51, 56.

Covenants not to compete are enforceable in Tennessee if "there is a legitimate business interest to be protected and the time and territorial limitations are reasonable." *Columbus Medical Services, LLC v. Thomas*, 308 S.W.3d 368, 384 *quoting Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005). To establish it has a legitimate business interest to be protected, an employer must show "special facts beyond protection from ordinary competition that would give *the employee* an unfair advantage in competing with the employer." *Id.* at 384-85. In making this determination, the court is to consider "(1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with

6

the customers on behalf of the employer." *Id.* at 385.  Regarding that third factor, "the employee in essence becomes 'the face' of the employer.  This relationship is built on the employer's goodwill." *Vantage Technology, LLC v. Cross*, 17 S.W. 3d 637, 646 (Tenn. Ct. App. 1999).

Plaintiff completely fails to overcome WVLT's interest in its customers' goodwill associated with their on-air meteorologist.  WVLT advertised and promoted Plaintiff's presence on WVLT.  Hardin Dec. at 5.  His name and likeness are therefore associated with WVLT.  Plaintiff very literally served as "the face" of WVLT to thousands of customers in the Knoxville area, and WVLT in turn has a clear business interest in protecting its brand and customer goodwill, and stopping viewer confusion, by requiring Plaintiff to remain the air in Knoxville for a full year after the end of his Employment Agreement.  *See Radio One*, 472 F. Supp. 2d at 759 (finding radio station had a legitimate business interest in preventing former radio personality from competing based on listener goodwill previously created by its advertising and promotion of that radio personality).  As described above, the scope and time of the non-compete is narrowly tailored to accomplish this legitimate business interest.  Plaintiff has not established a likelihood of success that the non-compete is unreasonable.  Therefore, the TRO should be dissolved.

### C.       Plaintiff Failed to Show Irreparable Harm

In evaluating harm that would result without an injunction, the Sixth Circuit has instructed that "[t]he key word in this consideration is *irreparable*.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Plaintiff alleges damages in the form of loss of income and health insurance.  Mot. for TRO at ¶¶ 14, 15.  But Plaintiff does not explain how the non-compete provision in the Employment

Agreement prevents him from obtaining <u>any other</u> employment in Knoxville, nor does he show any actual harm through turning down job offers because of the non-compete. The harm here is entirely theoretical. He also fails to demonstrate that monetary damages would be an inadequate remedy for his claimed lost wages and health insurance benefits later in this case should he ultimately prevail. Plaintiff has failed to establish the irreparable harm element and the TRO should be dissolved. *See Brashear v. CCG Sys., Inc.*, No. 1:18-cv-00059, 2018 U.S. Dist. LEXIS 178780, at *11 (M.D. Tenn. Oct. 17, 2018) (finding no irreparable harm where employee sought to have non-compete deemed invalid through TRO, and only alleged harm of being restrained from earning a living).

Additionally, in prior negotiations during the week of August 12, 2019, WVLT offered to limit the scope of the non-compete to only Plaintiff being an on-air talent at just two Knoxville television stations, WBIR-TV and WATE-TV. Hardin Dec. at ¶ 6. He would be free to work at any media outlet as a producer, in a weather-related role, or another capacity, just not appear on air, in Knoxville. Or Plaintiff could take any job with a TV station besides WBIR-TV and WATE-TV in Knoxville, or any TV station in Chattanooga, Tri-Cities, or anywhere else outside the Knoxville area. In other words, Plaintiff would not be required to uproot is family to find comparable employment elsewhere as he claims in support of his irreparable harm argument. Put simply, Plaintiff did not show irreparable harm, especially when he would only be restricted from appearing as on-air at only two Knoxville stations for the remainder of the Employment Agreement's term. Accordingly, the TRO should be dissolved.

### D. Plaintiff's TRO Motion Ignored Harm to Others

Plaintiff's Complaint and TRO motion fails to address whether issuance of a TRO will result in substantial harm to others. In fact, WVLT would be harmed by allowing Plaintiff to work

8

as an on-air meteorologist at the other stations in Knoxville. WVLT spent significant time, effort and resources in promoting his presence on WVLT. As a result, his name and likeness are associated with WVLT and are well-known to viewers in the Knoxville area. If Plaintiff was permitted to compete within the Knoxville Designated Market Area within one year following the separation of his employment, WVLT would likely lose viewers to its competitor. This factor weighs against the TRO.

### E.       Plaintiff's TRO Motion Ignored Public Interest

Plaintiff's Complaint and TRO motion also fails to address whether the public interest is advanced by the TRO. Rather, public interest supports enforcing the non-compete provision in the Employment Agreement. "Judicial enforcement of a noncompetition provision in an employment contract generally serves the public interest by promoting stability and certainty in business and employment relationships." *Corp. Express Office Prods. v. Warren*, No. 01-2521, 2002 U.S. Dist. LEXIS 27653, at *84 (W.D. Tenn. May 24, 2002). This factor also weighs against the TRO.

### F.       Conclusion

Based on the foregoing, WVLT respectfully requests that its Motion to Dissolve the State Court's Ex Parte Temporary Restraining Order be granted and that the TRO be immediately dissolved.

s/P. Maxwell Smith
Mark E. Stamelos (TN 021021)
Louis P. Britt (TN 005613)
P. Maxwell Smith (TN 026602)
FORDHARRISON LLP
150 Third Ave South, Suite 2010
Nashville, Tennessee 37201
Telephone: (615) 574-6700
Facsimile:  (615) 574-6701
mstamelos@fordharrison.com
lbritt@fordharrison.com
msmith@fordharrison.com

*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via First Class Mail, postage

prepaid, and email this 23rd day of August, 2019, upon:

Mario L. Azevedo II
Landry & Azevedo
5301 Kingston Pike
Knoxville, TN 37919
mario@lalawknoxville.com

*Counsel for Plaintiff*


s/P. Maxwell Smith

10